O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HELEN D. KIRK,                         )   NO. EDCV 06-01432-MAN
                                       )
              Plaintiff,               )
                                       )   MEMORANDUM OPINION
        v.                             )
                                       )   AND ORDER
MICHAEL J. ASTRUE[1],                  )
Commissioner of the                    )
Social Security Administration,        )
                                       )
              Defendant.               )
_____)

     Plaintiff filed a Complaint in January 11, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's applications for a period of disability ("POD"), disability
insurance benefits ("DIB"), and supplemental security income ("SSI").
On February 9, 2007, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c).  The parties filed a Joint Stipulation on September 18, 2007, in
which:  plaintiff seeks an order reversing the Commissioner's decision

_____

[1]    Michael J. Astrue became the Commissioner of the Social Security
Administration on February 12, 2007, and is substituted in place of
former Commissioner Joanne B. Barnhart as the Defendant in this action.
(*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security
Act, last sentence, 42 U.S.C. § 405(g).)

and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for a POD, DIB, and SSI on August 3, 2001, alleging an inability to work since August 15, 2000, due to a combination of exertional and non-exertional impairments.  Specifically, plaintiff's alleged impairments consist of:  two ruptured discs and a plate in her neck; herniated discs in her low back; shoulder problems; carpal tunnel in both wrists; arthritis in both hips, right knee, arms, and shoulders; difficulty with balance; visually impaired; difficulty concentrating; and forgetfulness.  (A.R. 103, 134, 371-72.) (Administrative Record ("A.R.") 112-15, 457-59).  She has past relevant work experience as a cashier, grinding machine operator, fast foods worker, stock clerk, and sewing machine operator.  (A.R. 147.)

The Commissioner denied plaintiff's claims initially and upon reconsideration.  (A.R. 92-97, 103-06.)  On February 10, 2004, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Helen Hesse ("ALJ").  (A.R. 40-91.)  On April 12, 2004, the ALJ issued an unfavorable decision, but found that plaintiff has the following severe impairments: lumbosacral spine musculoligamentous sprain and strain; cervical disc disease status post discectomies and fusions at C5-6 and C6-7 with bone graft and implant of cervical plate; status post bilateral carpal tunnel releases; status

post right anterior acromioplasty; and history of alcohol abuse, in remission, nicotine abuse, and depressive disorder, not otherwise specified.  (A.R. 16-27.)  On May 12, 2004, plaintiff timely filed a request for review of that decision, and on June 5, 2004, the Appeals Council denied review of the ALJ's decision.[2]  (A.R. 4-7.)

On August 3, 2004, plaintiff filed a complaint in this Court in Case No. EDCV 04-00948-MAN.  On March 30, 2006, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings (the "2006 Order").[3]  (A.R. 507-26.)  On June 7, 2006, the Appeals Council remanded the case to the ALJ for compliance with the 2006 Order.[4]  (A.R. 527-28.)

---

[2]    On June 8, 2004, plaintiff filed subsequent applications for DIB and SSI, which resulted in a finding of disability as of April 13, 2004. (Joint Stipulation ("Joint Stip.") at 2.)

[3]    The 2006 Order found a remand warranted for two reasons:  first, the ALJ failed to develop the record adequately regarding plaintiff's limitations because, *inter alia*, the ALJ failed to consider properly the opinion of plaintiff's treating physician, Patricia Christie, M.D.; and second, the ALJ improperly rejected the side effects of plaintiff's medications.  (A.R. 511-25.)

[4]    In effectuating this Court's 2006 Order, the Appeals Council stated:

> Upon remand, the Administrative Law Judge will further evaluate the treating source opinions pursuant to the provisions of 20 C.F.R. 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 C.F.R. 404.1512 and 416.912).  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.  (A.R. 528.)

1    On August 15, 2006, plaintiff, who was represented by counsel,

2  testified at a hearing before the same ALJ.  (A.R. 693-710.)  On October

3  24, 2006, the ALJ again denied plaintiff's claims, the decision now at

4  issue in this action.  (A.R. 714-21.)

5

6                   **SUMMARY OF ADMINISTRATIVE DECISION**

7

8    In her decision, the ALJ rejected the opinion of plaintiff's

9  treating physician, Dr. Christie, because it was "unsupported by any

10  actual objective medical findings." (A.R. 717.)  Specifically, the ALJ

11  stated that Dr. Christie's treatment "notes do not mention any radicular

12  symptoms," and "[a]bsent actual objective findings, the undersigned must

13  reject this assessment."  (*Id.*)

14

15    Additionally, the ALJ concluded that "[t]here is no credible

16  evidence of regular usage of strong medication to alleviate pain that

17  would significantly impair [plaintiff's] ability to do basic work

18  activities.   There was no evidence in the medical record of any

19  significant side effects." (A.R. 718.)

20

21    Based upon the ALJ's residual functional capacity assessment, and

22  vocational expert testimony, the ALJ found that plaintiff was unable to

23  perform her past relevant work.  (A.R. 720.)  However, the ALJ found

24  that plaintiff could perform the following jobs:  usher/lobby attendant

25  and ride operator.  (*Id.*)  Accordingly, the ALJ concluded that plaintiff

26  was not disabled within the meaning of the Social Security Act during

27  the time period at issue.  (*Id.*)

28

4

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

5

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges that the ALJ failed to comply with the Court's 2006 Order in two respects.  First, plaintiff contends that the ALJ again failed to consider properly the side effects of plaintiff's medications.  Second, plaintiff contends that the ALJ again failed to consider adequately the opinion of plaintiff's treating physician, Dr. Christie, and to develop the record properly.  For the reasons detailed below, the Court agrees and concludes there is no reason to remand this case again for further administrative proceedings.[5]

**I.   The ALJ Wholly Disregarded The Court's Order To Consider Properly The Side Effects Of Plaintiff's Medications On Her Ability To Work.**

When an ALJ evaluates a claimant's limitations, he must consider

---

[5]   Plaintiff alleges a third issue in the Joint Stipulation:  whether the ALJ properly considered the opinion of S.B. Pordazi, M.D.  In view of the Court's conclusion that an award of benefits is warranted based on the two issues addressed herein, the Court need not, and does not, address the third issue raised by plaintiff.

evidence regarding the side effects of medications. Social Security Ruling 96-7p indicates that the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" should be considered in the disability evaluation. *See also* 20 C.F.R. § 404.1529(c)(3)(iv). The Ninth Circuit has observed that an ALJ must "consider all factors that might have a significant impact on an individual's ability to work." <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993)(citation omitted). Such factors "may include side effects of medications as well as subjective evidence of pain." *Id*. at 818.

In its last remand Order, the Court determined that the ALJ improperly rejected the side effects of plaintiff's medications. The case was remanded to allow the ALJ the opportunity to correct this error.[6] However, the ALJ's latest decision is totally devoid of any express consideration of the side effects of plaintiff's medications and/or their impact on plaintiff's ability to work.

In her decision, the ALJ simply states "[t]here is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair [plaintiff's] ability to do basic work activities. There was no evidence in the medical record of any significant side effects." (A.R. 718.) Not only is this assertion legally insufficient as it relates to the evaluation of plaintiff's disability claim, but it also borders on a mischaracterization of the

---

[6]    Specifically, this Court found that "the ALJ's finding that Plaintiff has no side effects from her medications that 'would significantly impair her ability to do basic work activities' is in error." (A.R. 525.)

record.  Factually, the record is replete with evidence of plaintiff's regular usage of strong pain medication, which could produce the side effects about which plaintiff complained, and the ALJ should have discussed this evidence.

For example, in her Reconsideration Disability Report, plaintiff reports taking the following medications:  Flexeril, Tylenol 3, Relafen, and Neurontin; and reports the following symptoms and/or side effects: joint pain and swelling, vision impaired, difficulty concentrating, and forgetfulness.  (A.R. 155-57.)  At the 2004 hearing, plaintiff testified that she feels "very fatigued," and she "can't focus."  (A.R. 51, 54.) Dr. Christie's treatment records clearly show that plaintiff consistently has been taking Vicodin, Neurontin, and Tylenol III since at least August 2002, when Dr. Christie began treating her.  (A.R. 375, 381, 384, 385, 399, 404, 413.)  Dr. Christie affirms plaintiff's complaints of medication side effects in her June 12, 2003 Medical Evaluation Form, in which Dr. Christie notes that "Pain causes severe depression, medications cause drowsiness and confusion."[7]  (A.R. 373.)

---

[7]   Consistent use of narcotic medication could affect plaintiff's ability to function in the workplace and could produce the symptoms about which plaintiff complained, namely fatigue and inability to concentrate.  The manufacturer of Vicodin warns that:  "Hydrocodone [Vidodin ES], like all narcotics, may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks such as driving a car or operating machinery; patients should be cautioned accordingly."  PHYSICIAN'S DESK REFERENCE, p. 1487 (53rd ed. 1999).  In addition, the manufacturer of Neurontin notes that the most commonly observed adverse effects of this medication are dizziness, fatigue, and abnormal vision.  (*Id.* at 2302-03.)  The manufacturer of Relafen states that adverse reactions include:  diarrhea, abdominal pain, dizziness, drowsiness, and fatigue.  (*Id.* at 3087.)  Finally, the manufacturer of Tylenol with Codeine (Tylenol III) warns that this drug contains controlled substances, tolerance can develop to it, and adverse reactions to the drug may be experienced, such as "lightheadedness, dizziness, sedation, shortness of breath, nausea and vomiting."  (*Id.* at

Despite the fact that there is substantial evidence in the record documenting plaintiff's severe and continuing medication side effects, the ALJ persists in failing to acknowledge them, and to consider expressly their impact on plaintiff's ability to engage in full-time work.  The ALJ was required to consider these side effects in evaluating plaintiff's disability claim, and her failure to do so, once again, constitutes error.

**II.  The ALJ Failed To Develop The Record Adequately And Failed To Evaluate Dr. Christie's Opinion Properly.**

The ALJ has a "special duty to fully and fairly develop the record." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  "An ALJ's duty to develop the record further is triggered . . . when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); *see* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(requirement in 20 C.F.R. §§ 404.1512(e) and 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Ryan v.

2252-53.)

9

1  _Comm'r of Soc. Sec._, 528 F.3d 1194, 1198 (9th Cir. 2008)(citations
2  omitted).

3

4      In her first unfavorable decision, the ALJ rejected Dr. Christie's
5  opinion regarding plaintiff's residual functional capacity, because,
6  _inter alia_, Dr. Christie "did not provide a comprehensive rational[e] to
7  support her decision."[8]   (A.R. 22.)   In its 2006 Order, the Court
8  concluded that the ALJ's rejection of Dr. Christie's opinion was not
9  based on substantial evidence and offered the ALJ an opportunity to
10 obtain clarification from Dr. Christie regarding the reasons for her
11 opinion.  Specifically, the Court ruled that "as it appears that the ALJ
12 primarily rejected Dr. Christie's opinion due to a lack of understanding
13 regarding the bases for her opinions, it is appropriate here to remand
14 the case for the ALJ to develop the record more fully."  (A.R. 519.)

15

16     In the most recent unfavorable decision, at issue here, plaintiff
17 contends that the ALJ substantially failed to comply with the Court's
18 2006 Order.  (Joint Stip. at 4-7, 12-14, 16.)  Plaintiff argues that not
19 only did the ALJ fail to develop the record adequately, but also she
20 failed, once again, to set forth the requisite specific and legitimate

21 _____

22 [8]     Dr. Christie opined that plaintiff:  would not be able to work at
   least six hours on a sustained daily basis even if provided a sit only,
23 stand only, or alternating sit and stand option; would need three to
   five hours of rest throughout an eight-hour day; should do no lifting;
24 cannot use her hands and arms repetitively for grasping, pulling,
   pushing, or fine manipulation for eight hours on a sustained daily
25 basis; cannot climb or reach on a repetitive sustained daily basis;
   should not work in certain environments (those with unprotected heights,
26 dust, fumes, and gases; moving machinery; marked changes in temperature
   or humidity; or automotive equipment that she must drive); and would not
27 be able to maintain adequate attendance on a sustained daily basis at
   any job following her alleged onset date.  (A.R. 373-74.)  Dr. Christie
28 diagnosed plaintiff with lower back pain with radiculopathy, neck pain,
   depression, and anxiety.  (_Id._)

reasons, supported by substantial evidence, for rejecting Dr. Christie's opinion.  (*Id.*)  For the reasons set forth below, the Court agrees.

In rejecting Dr. Christie's opinion, the ALJ states that she:

> rejects [Dr. Christie's] assessment as unsupported by any actual objective medical findings.  While the treatment notes at exhibit 14F/4-14, 18F and 21F note continued complaints of pain, there is little documented objective findings.  The notes do not mention any radicular symptoms.  There were no motor or sensory deficits noted.  There was only subjective pain and subjective range of motion deficits noted.  Absent actual objective findings, the undersigned must reject this assessment.

(A.R. 717.)

Rather than simply re-contacting Dr. Christie for clarification of her opinion (which would not have required an extraordinary effort), the ALJ instead chose to rely on the testimony of a non-examining medical expert, Sami Nafoosi, M.D.  Dr. Nafoosi, however, did not rely on any new evidence in rendering her opinion at the 2006 hearing.  As such, the fundamental problem with the ALJ's reliance on Dr. Nafoosi's opinion is clear:  Dr. Nafoosi's testimony was based on the same inadequately developed record upon which the ALJ improperly relied in her last decision that was reversed and remanded by this Court.

More importantly, the ALJ's mere solicitation of testimony from a

non-examining medical expert was not calculated to get to the core issue, *i.e.* whether any objective medical evidence of radiculopathy exists to support Dr. Christie's opinion.  The ALJ should have re-contacted Dr. Christie for clarification of her opinion; her reliance instead on Dr. Nafoosi's opinion, which the Court cannot be certain is based upon substantial evidence, falls short of compliance with the Court's 2006 Order.

Notwithstanding the ALJ's errors, upon further review of the present record, the Court has determined that substantial objective evidence of radiculopathy indeed does exist.  On January 4, 2000, plaintiff underwent a spine consultation and evaluation in which one of her treating physicians, Cyrus Ghavam, M.D., reported that plaintiff's "cervical spine MRI shows diffuse disc protrusions at the C5-6 and C6-7 level which result in some neural foraminal stenosis" and she "has a right cervical radiculopathy which clinically seems to be primarily related to the C6 level.  She has definite abnormalities at C6-7 as well."  (A.R. 202, Exhibit 3F/18.)[9]

---

[9]   Critically, at the hearing, no testimony was adduced regarding this exhibit, as neither plaintiff's counsel nor Dr. Nafoosi could seem to locate it in the record.  The following colloquy took place:

Q: Could you take a look, doctor, at 3F-13.

A: 3F-13.

Q: There's references to radiculopathy.

A: January.  Oh, yeah, she did.  This is -- that was the indication for surgery.

Q: Okay.

A: That is not in 3F-13.  It was -- let me see.  Where did I see that? 3F-10. . . .

12

1   Therefore, although the ALJ substantially failed to comply with the
2   Court's directive to develop the record further, the Court is satisfied
3   that there is objective medical evidence of radiculopathy to support Dr.
4   Christie's opinion.  Accordingly, the ALJ's primary reason for rejecting
5   Dr. Christie's opinion -- that the record lacked "actual objective
6   findings" of radiculopathy -- does not pass muster and constitutes
7   reversible error.

8

9   **III.   <u>Remand And Payment Of Benefits Is Appropriate</u>**.

10

11   As indicated above, the Court finds that the ALJ's decision is in
12   error for the reasons set forth above.  For the reasons set forth below,
13   the Court concludes that there is no reason to remand this case again
14   for further administrative proceedings.

15

16   In the Ninth Circuit, courts have the discretion to "credit as
17   true" both the opinions of treating physicians and the testimony of
18   claimants when the ALJ has failed to provide legally sufficient reasons
19   for rejecting the same.  *See, e.g.,* <u>Widmark</u>, 454 F.3d at 1069; <u>Benecke</u>
20   <u>v. McCarthy</u>, 379 F.3d 587, 594 (9th Cir. 2004); <u>Connett</u>, 340 F.3d at
21   876; <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).  In addition,

22

23   Q: Also, at 3F-14 there was a lumbar MRI that showed --

24   A: 3F-14.

25   Q: -- some pretty significant findings in the Impressions section.

26   A: 3F-14.  No, this is cervical.  Let me see, might be close
27   by.  3F-4, you mean?  Maybe you mean 3F-4.  Yeah, 3F-4 is the
     MRI of the lumbar spine.

28   (A.R. 703-04.)

the decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman, at 1175-78. As the Ninth Circuit has repeatedly held, when the record is fully developed and a remand for further administrative proceedings would serve no purpose, the Court should remand for an award and payment of benefits. *See, e.g.*, Benecke, 379 F.3d at 593; Smolen, 80 F.3d at 1292. That principle governs here.

This case was remanded in 2006, based on errors by the ALJ in her consideration of the side effects of plaintiff's medications and the opinion of plaintiff's treating physician. As discussed above, the ALJ repeated these same errors on remand. In Benecke, the Ninth Circuit emphasized that "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication," and unfairly "delay much needed income for claimants who are unable to work and are entitled to benefits." 379 F.3d at 595. Moreover, in Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004), after finding that reversal was justified due to the ALJ's commission of clear error in rejecting the claimant's pain testimony, the Ninth Circuit concluded that a remand for an award of benefits, rather than for further proceedings on the credibility issue, was appropriate, reasoning: "The Commissioner, having lost this appeal, should not have another opportunity to show that [plaintiff] is not credible any more than [plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." *See also* Sisco v. United States Dep't of Health and Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)(after noting that the claimant's benefits claim had been adjudicated by the Commissioner twice

14

at all levels over a four-year period and finding that substantial evidence did not support the finding that the claimant was not disabled, reversing and remanding for an award of benefits, opining: "The Secretary is not entitled to adjudicate a case 'ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" (citation omitted)).

As discussed above, Dr. Christie opined, *inter alia*, that plaintiff would not be able to work at least six hours on a sustained daily basis even if provided a sit only, stand only, or alternating sit and stand option, and would need three to five hours of rest throughout an eight-hour day. (A.R. 373-74.) If such evidence is credited as true, which the Court believes is appropriate under the circumstances, the record shows that plaintiff is disabled. As previously noted, plaintiff was determined to be disabled as of April 13, 2004, and has been awarded Social Security benefits since that date. The vocational expert testified at the August 2006 hearing that, if plaintiff is "unable to work an eight-hour day, forty-hour work week, or would miss more than two days of work per month," then there would be "No jobs" that plaintiff could perform. (A.R. 708.)

In this case, remand for an award of benefits, rather than for additional administrative proceedings, is appropriate. Thus, the Court finds that plaintiff was disabled throughout the relevant period, and she is entitled to receive benefits from her claimed onset date consistent with the Commissioner's regulations for the timing of the payment of DIB and SSI.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision is REVERSED, and this case is remanded to the Commissioner for the payment of benefits to plaintiff.   Judgment shall be entered in favor of plaintiff and this action shall be dismissed with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 19, 2008

                                          /s/
                              ———————————————————————
                                   MARGARET A. NAGLE
                              UNITED STATES MAGISTRATE JUDGE

16